IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

SANDRA KAY WALLER

    Plaintiff,

v.                                        Docket No.
                                            Jury Demand

PEARSON EDUCATION, INCORPORATED

    Defendant.

## COMPLAINT

Comes the plaintiff, through counsel, and would show the court as follows:

### PARTIES

1. Plaintiff is a citizen and resident of this State and resides within the confines of the jurisdiction of this court.

2. Defendant, Pearson Education, Inc., is a Delaware Corporation with its principal offices located at 1 Lake St., Upper Saddle River, New Jersey. The registered agent for service of process is Prentice-Hall Corporation System, Inc., 2908 Poston Ave., Nashville, TN 37203.

### JURISDICTION AND VENUE

3. This court has jurisdiction pursuant to the Americans with Disabilities Act of 1990 [ADA] including changes made by the ADA Amendments Act of 2008 (P.L. 110-325). Further, this court has jurisdiction pursuant to the

Tennessee Disability Act, TCA 8-50-103 and the common law of the State of Tennessee.

4. Venue is proper in that the acts complained of occurred within the confines of the jurisdiction of this court.

## FACTS

5. Plaintiff began working for defendant's predecessors, Prentice-Hall and Simon and Schuster in October 1992 as a sales representative. The name of her employer subsequently changed to the present defendant, Pearson Education, Incorporated. During the course of her employment she became an award-winning sales representative, and later, a district sales manager with average sales of 109%.

6. In approximately 2009, plaintiff began experiencing memory loss and difficulty walking. After consulting with physicians, plaintiff was diagnosed as having a muscle rigidity disease with Parkinson-like syndrome.

7. Plaintiff's physician recommended that she take time off work, and in January of 2010 she was placed on short-term disability. After six months, plaintiff was placed on long-term disability. The defendant was acutely aware of plaintiff's medical condition.

8. Plaintiff returned to work on January 24, 2011 with some minor limitations requiring that she limit her travel to 60% of the time she was previously traveling per month. Plaintiff returned to her same position, Pre-

Work Curriculum Manager for Mathematics and Science, on January 24, 2011 and performed her job without any difficulty whatsoever.

9. In April of 2011 plaintiff was advised by human resources representative, Sheri Jolcover that her position was going to change and that she should consider "leaving her position". The reason given was that there was to be more travel added to her job which would entail visiting school district superintendents. Ms. Jolcover advised plaintiff that she knew she was sick and could go back on long-term disability if she so desired.

10. Plaintiff was extremely shocked and appalled by this information. Plaintiff advised Ms. Jolcover that her physician had given her approval to work and that she could not go back on disability even if she wanted to. Plaintiff advised her that she had every intention of staying employed and performing any work required of her. After this conversation, Plaintiff continued to perform her job without difficulty.

11. On September 13, 2011, plaintiff was told to participate in a conference call with management employees. Present for the conference call were Riley Wade, former Area Vice President, Sheri Jolcover, human resource representative and Pat McHugh, Vice President for Shared Services. During the conference call Plaintiff was told that the seven Pre-work Curriculum Managers in the company had been reduced to five and that she was not one of the ones chosen to remain. Further, she was advised that this decision was based on a certain "skill set" for math or science which she did not possess.

12. Plaintiff knew that this was nothing more than a phony or pretextual reason for removing her from the company due to her medical condition, the reason being that Plaintiff far exceeded the requirements for the "skill set" for the position and much more. Plaintiff had formerly worked for a National Aeronautics and Space Administration (NASA) contractor as Director of the NASA Teacher Resource Center; she was a Trainer for NASA in their Total Quality Management Program and received the Chairman's Award for Excellence in Customer Satisfaction; she was selected to be a keynote speaker at the Mississippi Women in Science and Technology conference; she was previously employed as an adjunct assistant professor at Oklahoma State University; she was a Science Education Representative and Lecturer for NASA's Marshall Space Flight Center in Huntsville Alabama and NASA/Martin Marietta Michoud Assembly Facility in New Orleans, Louisiana.

13. In addition to the aforementioned spurious reasons for her termination, plaintiff was advised that the new position for which she did not possess the requisite skill-set, would be a "national" position and not "regional" position which plaintiff was used to. Plaintiff responded that she could travel nationally just like everyone else and asked if they were doing this because of her disability. Sheri Jolcover immediately spoke up and said that "Pat McHugh is not aware of your disability and that your disability is not that obvious. Plaintiff would aver that this is blatantly false because

4

everyone knew that she had taken off a year from work because of her disability. At the end of the phone conference, Plaintiff was told by Mr. McHugh that she could apply for another position termed New Business Development Manager and then abruptly hung up on the plaintiff.

14. The next day after plaintiff was hung up on by Mr. McHugh, she applied for this new position. After reading the job description, plaintiff knew that she could perform the duties without any problem whatsoever.

15. On Thursday, September 15, 2011, Pat McHugh called plaintiff to interview her over the phone for this position. Plaintiff would aver that the interview could not have gone any better and that she expected to be chosen. However, the next day plaintiff was notified that someone else had been chosen for this position. The person chosen, Jackie Marshall, did not have the years of experience as the plaintiff, less qualified, and had no obvious disability. Due to her not being chosen for this new position, plaintiff was effectively terminated.

16. Based upon the above facts, plaintiff would aver that she was terminated and that the sole basis for her termination was due to her disability and/or perceived disability as defined by the Americans with Disabilities Act and the Tennessee Handicap Act. She was treated unfairly and discriminatorily because the defendant believed her to be disabled when in fact she was not so disabled. Plaintiff would aver that the defendant has an unreasonable bias against her because of her medical condition as

aforementioned without a proper basis, and that her medical condition may change for the worse in the future.

17. Plaintiff would aver that the blatant, intentional and malicious acts of the defendant amount to discrimination on the basis of her disability and/or perceived disability which merit the award of punitive damages.

**WHEREFORE AND FOR ALL OF WHICH** plaintiff sues defendant for $1,000,000.00 in compensatory damages which include lost wages, front pay, damages for emotional distress, embarrassment, loss of enjoyment of life and $3,000,000.00 in punitive damages, and for such other and general relief as he is deemed entitled to including but not limited to a reasonable attorney fee, reasonable discretionary expenses of litigation, and the costs of the cause. Plaintiff demands a jury to resolve the issues joined.

Respectfully submitted,

s/James L. Harris No. 014173
s/Robert J. Shockey No. 2092
Attorney at Law
2400 Crestmoor Road
Nashville, Tennessee 37215
Phone 615-260-3677
Fax 615-297-6855
jhar401@comcast.net

6

Case 3:11-cv-01084   Document 1   Filed 11/14/11   Page 6 of 6 PageID #: 6