IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SANDRA K. WALLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:11-01084 |
| v. | ) | JUDGE HAYNES |
| | ) | |
| PEARSON EDUCATION, INC. | ) | |

**CASE MANAGEMENT ORDER No. 1**

I. **Jurisdiction and Venue.** This court has jurisdiction pursuant to the Americans with Disabilities Act of 1990 [ADA] including changes made by the ADA Amendments Act of 2008 (P.L. 110-325). Further, this court has jurisdiction pursuant to the Tennessee Disability Act, TCA 8-50-103 and the common law of the State of Tennessee.

Venue is proper in that the acts complained of are alleged to have occurred within the confines of the jurisdiction of this court.

II. **Parties' Theories of the Case**

**1. Plaintiff's Theory of the Case.** Plaintiff began working for defendant's predecessors, Prentice-Hall and Simon and Schuster in October 1992 as a sales representative. The name of her employer subsequently changed to the present defendant, Pearson Education, Incorporated. During the course of her employment

she became an award-winning sales representative, and later, a district sales manager with average sales of 109%.

In approximately 2009, plaintiff began experiencing memory loss and difficulty walking. After consulting with physicians, plaintiff was diagnosed as having a muscle rigidity disease with Parkinson-like syndrome. Plaintiff's physician recommended that she take time off work, and in January of 2010 she was placed on short-term disability. After six months, plaintiff was placed on long-term disability. The defendant was acutely aware of plaintiff's medical condition. Plaintiff returned to work on January 24, 2011 with some minor limitations requiring that she limit her travel to 60% of the time she was previously traveling per month. Plaintiff returned to her same position, Pre-Work Curriculum Manager for Mathematics and Science, on January 24, 2011 and performed her job without any difficulty whatsoever.

In April of 2011 plaintiff was advised by human resources representative, Sheri Jolcover that her position was going to change and that she should consider "leaving her position". The reason given was that there was to be more travel added to her job which would entail visiting school district superintendents. Ms. Jolcover advised plaintiff that she knew she was sick and could go back on long-term disability if she so desired. Plaintiff was extremely shocked and appalled by this information. Plaintiff advised Ms. Jolcover that her physician had given her approval to work and that she could not go back on disability even if she wanted to. Plaintiff advised her that she had every intention of staying employed and

2

performing any work required of her. After this conversation, Plaintiff continued to perform her job without difficulty.

On September 13, 2011, plaintiff was told to participate in a conference call with management employees. Present for the conference call were Riley Wade, former Area Vice President, Sheri Jolcover, human resource representative and Pat McHugh, Vice President for Shared Services. During the conference call Plaintiff was told that the seven Pre-work Curriculum Managers in the company had been reduced to five and that she was not one of the ones chosen to remain. Further, she was advised that this decision was based on a certain "skill set" for math or science which she did not possess.

Plaintiff knew that this was nothing more than a phony or pretextual reason for removing her from the company due to her medical condition, the reason being that Plaintiff far exceeded the requirements for the "skill set" for the position and much more. Plaintiff had formerly worked for a National Aeronautics and Space Administration (NASA) contractor as Director of the NASA Teacher Resource Center; she was a Trainer for NASA in their Total Quality Management Program and received the Chairman's Award for Excellence in Customer Satisfaction; she was selected to be a keynote speaker at the Mississippi Women in Science and Technology conference; she was previously employed as an adjunct assistant professor at Oklahoma State University; she was a Science Education Representative and Lecturer for NASA's Marshall Space Flight Center in

3

Case 3:11-cv-01084   Document 10   Filed 01/09/12   Page 3 of 10 PageID #: 39
Case 3:11-cv-01084   Document 11   Filed 01/09/12   Page 3 of 9 PageID #: 49

Huntsville Alabama and NASA/Martin Marietta Michoud Assembly Facility in New Orleans, Louisiana.

In addition to the aforementioned spurious reasons for her termination, plaintiff was advised that the new position for which she did not possess the requisite skill-set, would be a "national" position and not "regional" position which plaintiff was used to. Plaintiff responded that she could travel nationally just like everyone else and asked if they were doing this because of her disability. Sheri Jolcover immediately spoke up and said that "Pat McHugh is not aware of your disability and that your disability is not that obvious. Plaintiff would aver that this is blatantly false because everyone knew that she had taken off a year from work because of her disability. At the end of the phone conference, Plaintiff was told by Mr. McHugh that she could apply for another position termed New Business Development Manager and then abruptly hung up on the plaintiff.

The next day after plaintiff was hung up on by Mr. McHugh, she applied for this new position. After reading the job description, plaintiff knew that she could perform the duties without any problem whatsoever. On Thursday, September 15, 2011, Pat McHugh called plaintiff to interview her over the phone for this position. Plaintiff would aver that the interview could not have gone any better and that she expected to be chosen. However, the next day plaintiff was notified that someone else had been chosen for this position. The person chosen, Jackie Marshall, did not have the years of experience as the plaintiff, less qualified, and had no obvious

disability. Due to her not being chosen for this new position, plaintiff was effectively terminated.

Based upon the above facts, plaintiff would aver that she was terminated and that the sole basis for her termination was due to her disability and/or perceived disability as defined by the Americans with Disabilities Act and the Tennessee Handicap Act. She was treated unfairly and discriminatorily because the defendant believed her to be disabled when in fact she was not so disabled. Plaintiff would aver that the defendant has an unreasonable bias against her because of her medical condition as aforementioned without a proper basis, and that her medical condition may change for the worse in the future.

2. **Defendant's Theory of the Case.** Prior to the elimination of her position, the Plaintiff was employed as a Curriculum Pre-Work Manager. On January 13, 2011, following approximately one year's leave of absence for medical reasons, she sought to return to work with restrictions. Although her physician indicated the restrictions had been provided by the Plaintiff, Pearson nonetheless engaged in an interactive process with the Plaintiff and was able to afford her reasonable accommodations such that she could return to work on January 24, 2011.

When the Plaintiff returned to her position, she recognized the work was changing as a result of various market and economic factors. She informed her supervisor that she had six months to reapply for disability benefits and asked to be informed if she might be losing her job during that period. By April 2011, the Company was moving toward a restructuring that would affect the Plaintiff's position. As requested, she was informed of this possibility, but was not asked to leave her position.

On September 13, 2011, the Plaintiff was formally notified of a restructuring within the Company that would result in the elimination of her position. She was encouraged to apply for other available positions. The Plaintiff applied for one of those positions, but was not the most qualified candidate.

The Plaintiff was one of five individuals in her job class whose jobs were affected by the reorganization. Her versions of various exchanges with Defendant representatives are inaccurate. Her claimed disability was not a factor in the decision to reorganize, nor in the selection of persons to fill remaining positions.

## III.      Schedule of Pretrial Proceedings

### A.      Rule 26(a)(1) Disclosure

The parties shall make their Rule 26(a)(1)(A) through (E) disclosures within (30) days from the date of the initial case management conference.

### B.      <u>Meeting of Counsel and Parties to Discuss Settlement Prospects</u>

Ninety (90) days from the date of the initial case management conference, counsel and clients are required to have a face-to-face meeting to discuss whether this case can be resolved without further discovery proceedings. If a party, other than a natural person, is involved in this litigation, a representative who has the authority to settle shall attend this meeting on behalf of that party. After the meeting is conducted, counsel shall prepare a report and file it with the Court reflecting that the parties met and that the parties made a good faith effort to evaluate the resolution of this case. This report should also include whether the parties believed that one of the Alternative Dispute Resolution ("ADR") procedures under the Local Rule would further assist the parties in resolving this matter.

6

C.    **Other Pretrial Discovery Matters**

As determined at the case management conference on Monday, January 9, 2012, this action is set for a jury trial on *December 4, 20~~__~~* at 9:00 a.m.

If this action is to be settled, the Law Clerk shall be notified by noon, *November 30, 2012.* If the settlement is reached thereafter resulting in the non-utilization of jurors, the costs of summoning jurors may be taxed to the parties dependent upon the circumstances.

A pretrial conference shall be held *November 19, 2012 at 3:00 pm* A proposed pretrial order shall be submitted at the pretrial conference.

All discovery shall be completed by the close of business on **June 1, 2012.** All written discovery shall be submitted in sufficient time so that the response shall be in hand by **May 1, 2012.** All discovery related statements shall be filed by the close of business on **May 1, 2012.** No motions related to discovery or for a protective order shall be filed until a discovery/protective order dispute conference has taken place and the attorneys of record shall attend and meet face-to-face in an effort to resolve the dispute and a jointed signed discovery/protective order dispute statement is submitted setting forth precisely the remaining issues in dispute and the reasons why those issues remain unresolved.

All dispositive motions[1] and Daubert motions shall be filed by the close of business on *August 3, 2012* ~~July 27~~, 2012, and any response thereto shall be filed by the close of business on *September 3, 2012* ~~August 27,~~ 2012. Any reply shall be filed by the close of business on **September 7, 2012.**[2] *14, 2012*

---

[1] No memorandum in support of or in opposition to any motion shall exceed twenty (20) pages. No replay shall be filed to any responses unless invited by the Court.
[2] Strict compliance is required to Rule 8(b)(7), Local Rules of Court (effective March 1, 1994) relating to motions for summary judgment.

Any motion to amend the pleadings or join parties shall be filed in sufficient time to permit any discovery necessary because of the proposed amendment to be obtained within the time for discovery. No amendments will be allowed if to do so will result in a delay in the disposition of the action by requiring extension of the discovery deadline.

There shall be no stay of discovery pending disposition of any motions.

The response time for all written discovery and requests for admission is reduced from thirty (30 to twenty (20) days.

Interrogatories pursuant to Rule 33, Federal Rules of Civil Procedure, shall be limited to sixty (60) such interrogatories. Subparts of a question shall be counted as additional question for purposes of overall number. In all other respects, Rule 9(1) Local Rules of Court (effective March 1, 1994) shall govern.

By the close of business on **March 30, 2012**, the plaintiff shall declare to the defendants (<u>not</u> to file with the Court) the identity of his expert witnesses and provide all the information specified in Rule 26(a)(2)(B).

By the close of business on **April 20, 2012**, the defendants shall declare to the plaintiff (<u>not</u> to file with the Court) the identity of their expert witnesses and provide all the information specified in rule 26(a)(2)(B).

Any supplements to expert reports shall be filed by the close of business on **April 27, 2012.** There shall not be any rebuttal expert witnesses.

To reduce the needless expenditure of time and expense, there shall not be any discovery depositions taken of expert witnesses. A party may, however, serve contention interrogatories and requests for admission upon another party's expert. If these discovery methods prove ineffective, a party may move to take the deposition of the expert. In a diversity action, a

8

treating physician is considered a fact witness unless the physician expresses opinions beyond the physician's actual treatment of the party.

For expert witnesses, the expert's Fed. R. Civ. P. 26(a)(2) report is considered to be the expert's direct examination testimony at trial. If an expert expects to expound his or her testimony beyond the working of the expert's report, the party calling the expert shall inform the opposing party with the specifics of that expounding testimony at least 15 days prior to the dispositive motion deadline.

These rules on experts are to ensure full compliance with Rule 26(a)(2); to enable the parties to evaluate any Daubert challenges prior to filing dispositive motions; to avoid conflicts with the experts' schedules; and to avoid the costs of expert depositions.

Local Rule I 2(c)(6)(c) (effective March 1, 1994) relating to expert witnesses shall apply in this action, and strict compliance is required.

It is so **ORDERED.**

**ENTERED** this the _____ day of January 2012.

WILLIAM J. HAYNES, JR.
United States District Judge